## UNITED STATES et al. v. CALISTAN PACKERS, Inc.

No. 3627–S.

District Court, N. D. California, S. D.
Oct. 2, 1933.

H. H. McPike, U. S. Atty., of San Francisco, Cal., and James Lawrence Fly, Sp. Asst. to Atty. Gen., for plaintiffs.

Louis S. Beedy, of San Francisco, Cal., for defendant.

ST. SURE, District Judge.

This proceeding concerns the peach industry in California. Ninety-nine and nine-tenths per cent. of the national production of canned peaches for interstate and foreign commerce is packed in this state. Suit is brought by the United States and the Secretary of Agriculture for injunctive and other relief against the operations of defendant, a peach canner, in violation of the marketing agreement and license for cling peaches canned in the state of California, which was approved and executed by the Secretary on August 17, 1933, under the Act of May 12, 1933, known as the Agricultural Adjustment Act (7 USCA §§ 601–619). The case coming on for a hearing upon plaintiffs' application for a temporary injunction and plaintiffs' motion for the appointment of a receiver was by consent and after argument submitted to the court for final adjudication on the merits as presented by plaintiffs' bill of complaint, defendant's answer, and the affidavits in support of plaintiffs' motions.

The violations set forth go to the very heart of the plan before the court and are in effect a challenge to the integrity and efficacy of that plan. They are: (1) Total production and sale far in excess of the production to which defendant was restricted under the plan; (2) failure to pay into the control fund the sums assessed against canners for the purpose of purchasing from farmers, at a fair price, all their surplus peaches, and thus preventing their glutting the market, breaking down the prices, and imperiling the industry and the trade and commerce thereof; (3) failure to permit the representatives of the Secretary to examine defendant's books, records, and papers.

Two questions of far-reaching importance are presented. The first goes directly to the constitutional validity of the Agricultural Adjustment Act and the agreement

and license before the court. Upon the constitutional question a number of points have been raised which need not be treated in great detail; for example, as to the improper delegation of legislative powers. It may readily be answered that where Congress has laid down fairly definite standards, the courts have consistently held that the procedure thereunder, even to the extent of providing rules and regulations, violations of which may be punished, may be placed in the hands of the administrative agencies of the government. This power of delegation is highly essential to the efficacy of such statutes.

■ The power to regulate interstate commerce is granted in broad terms to the national Congress and this power should not be restrictively construed. Rather it must be construed to give the Congress the power to regulate any and all commerce which may seriously affect the interstate trade. This court, with propriety, cannot make the narrow holding that the legislative body, under this and analogous statutes, is without power to regulate intrastate commerce as a proper means of achieving the desired regulation of the interstate commerce. In this and other respects this power to regulate must be construed to effectuate the broad purposes of the constitutional grant and of the national policy.

■ Upon the constitutional question greatest reliance is placed upon the contention that the statute, agreement, and license before the court violate the due process clause (Const. Amend. 14). A proper respect for the deliberate judgment of the co-ordinate legislative branch of the government requires that the court do not hastily pronounce important legislation invalid. The Congress has made a legislative finding that a national emergency exists. This court, upon that finding and upon its own judicial notice of the economic distress throughout the nation, here arrives at a similar conclusion.

■ In the cling peach industry and in other industries, due to great overproduction and ruinous competition, the members of that industry and the trade and commerce thereof have been near the point of ruination. In particular, due to the foregoing factors and to the great disparity between the prices of commodities purchased by the farmers and the prices they have received for their own products, the farmers have been reduced to a condition bordering upon economic servitude. In the past few years the price for their peaches has been precipitously reduced from around $20 per ton to as low as $6.50 per ton. Overproduction and glutted markets travel hand in hand with ruthless competition.

It is needless to point out that the welfare of the nation has been seriously handicapped by these conditions and the country's trade and commerce has been vitally affected. Under conditions such as these the court is bound to arrive at the conclusion that the peach industry is affected with a national public interest and that the Congress has the constitutional power to adopt appropriate legislation to cure these evils. The due process clause in such a situation cannot properly be construed to obstruct the national policy. Neither the Constitution nor the due process clause requires the perpetuation of conditions which impair the national vitality.

■ To adopt the view that the Constitution is static, and that it does not permit Congress from time to time to take such steps as may reasonably be deemed appropriate to the economic preservation of the country, is to insist that the Constitution was created containing the seeds of its own destruction. This court will not subscribe to such a view.

■ As was stated by Mr. Justice Brewer in an opinion of the United States Supreme Court: "Constitutional provisions do not change, but their operation extends to new matters, as the modes of business and the habits of life of the people vary with each succeeding generation. * * * Just so is it with the grant to the national government of power over interstate commerce. The Constitution has not changed. The power is the same. But it operates to-day upon modes of interstate commerce unknown to the fathers, and it will operate with equal force upon any new modes of such commerce which the future may develop." In re Debs, 158 U. S. 564, at page 591, 15 S. Ct. 900, 909, 39 L. Ed. 1092.

■ The court holds that the Agricultural Adjustment Act and marketing agreement and license for cling peaches canned in the state of California, and the proceedings of the Secretary of Agriculture thereunder, are constitutional and valid. Economy Dairy Company, Inc., v. Henry A. Wallace, Secretary of Agriculture, decided by the Supreme Court of the District of Columbia, August 29, 1933, and reported in 61 Wash. Law Rep. 633; Milton Beck v. Henry A. Wallace, Secretary of Agriculture, decided by the Supreme Court of the District of Columbia, August 29, 1933, and reported in 61 Wash. Law Rep. 633; Southport Petroleum v. Harold L. Ickes, Secretary of Interior, decided by the Supreme Court of the District of Columbia, August, 1933, and reported in 61

Wash. Law Rep. 577; People v. Nebbia, 262 N. Y. 259, 186 N. E. 694 (July 11, 1933).

The only other important question is as to whether or not in order to prevent irreparable injury to the country, and in particular the breaking down of this and other phases of the emergency program, this court has jurisdiction, under its general equity powers, to grant the relief sought. While the statute makes no express provision for such equitable relief, it is the conclusion of the court that it has appropriate jurisdiction, under the circumstances of this case, to grant the relief demanded.

The parties may submit a decree in conformity with the views expressed herein.